UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------
EUGENE SCALIA,[1]
Secretary of Labor,
United States Department of Labor,                    **Memorandum & Order**

                    *Plaintiff*,                      19-CV-3389(KAM)(SJB)

     -against-

KDE EQUINE, LLC and
STEVE ASMUSSEN,

                    *Defendants*.
-------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

          Presently before the court is a motion filed by

defendants KDE Equine, LLC and Steve Asmussen (collectively,

"Defendants").  Defendants' motion seeks dismissal of this

action on the ground that it was filed in an improper venue.  In

the alternative, Defendants seek transfer of this action to the

United States District Court for the Western District of

Kentucky, or a stay of this action until a related case in the

Western District of Kentucky is resolved.  For the reasons

herein, Defendants' motion is DENIED.

                    **Background**

          The United States Department of Labor (the "DOL")

initiated this case in June 2019.  (*See generally* ECF No. 1,

---

[1] Eugene Scalia is now the United States Secretary of Labor.  Pursuant
to Federal Rule of Civil Procedure 25(d), Secretary Scalia replaces
former secretary R. Alexander Acosta as the plaintiff in this action.

Complaint ("Compl.").)  Defendant KDE Equine, LLC ("KDE Equine")
is an LLC registered in Texas that operates training stables for
thoroughbred race horses in various locations in the United
States, including a training stable that is open all year at
Belmont Park Race Track in Elmont, New York.  (*Id.* at ¶¶ 7-9.)  In
addition, KDE Equine personnel attend races at Saratoga Race
Course in Saratoga Springs, New York, and at Aqueduct Racetrack in
Queens, New York.  (*Id.* at ¶ 10.)  Elmont and Queens are both
located in the Eastern District of New York, whereas Saratoga
Springs is located in the Northern District of New York.
Defendant Steve Asmussen ("Mr. Asmussen") is a founder, managing
member, and the President of KDE Equine.  (*Id.* at ¶ 11.)

Defendants employ hot walkers and groomers.  (*Id.* at ¶
7.)  A hot walker's main duty is walking alongside race horses,
including to warm them up before races or to cool them down
afterward.  (*Id.* at ¶ 36.)  Hot walkers also have some
responsibility for cleaning the stables, cleaning the horses, and
other assorted tasks.  (*Id.* at ¶ 37.)  Groomers are responsible
for brushing the horses and cutting their hair, as well as
assisting with cleaning the stables and putting on or removing
saddles and bridles.  (*Id.* at ¶ 38)

The DOL alleges that Defendants did not accurately
document the hours worked by hot walkers and groomers each day,

2

and that hot walkers were typically scheduled to work at least 46.5 hours per week, while groomers were typically scheduled to work at least 60 hours per week. (*Id.* at ¶¶ 40-43.)  In addition to these scheduled hours, the employees also spent time traveling between race tracks or performing additional work as necessary. (*Id.* at ¶¶ 44-45.)  The DOL alleges that Defendants created false timesheets with inaccurate hours listed for their employees. (*Id.* at ¶¶ 46-49.)  The DOL brought two claims against Defendants under the Fair Labor Standards Act (the "FLSA"): one for allegedly failing to pay employees the overtime rate required by the FLSA, and one for allegedly failing to make, keep, and preserve adequate and accurate records of the employees' wages and hours. (*Id.* at ¶¶ 85-59.)

Prior to the initiation of this action, in June 2015, the DOL filed a complaint against the same Defendants in the United States District Court for the Western District of Kentucky. (Case No. 15-cv-562 (the "Kentucky action").)  In the Kentucky action, which is pending before Judge Claria Horn Boom, the DOL alleged the same two violations of the FLSA related to Defendants' employees working at Churchill Downs racetrack in Louisville, Kentucky. (*See* 15-cv-562, ECF No. 43, Amended Complaint.)  In May 2019, Judge Boom conducted a three-day bench trial. (*See* 15-cv-562, ECF Nos. 117-25.)  On Judge Boom's order, the parties filed

post-trial briefing in July 2019.  (15-cv-562, ECF Nos. 128, 129.)
The Kentucky action remains pending.

Defendants have moved for this case, filed in the
Eastern District of New York, to be dismissed for improper venue;
or, in the alternative, for either a transfer of this case to the
Western District of Kentucky, or a stay of this case pending the
outcome of the Kentucky action.  (ECF No. 23, Defendants' Motion
to Dismiss or to Transfer or Stay ("Mot."); *see* ECF No. 25,
Defendants' Reply in Support ("Reply").)  The DOL opposed the
motion.  (ECF No. 24, Plaintiff's Opposition to Defendants' Motion
("Opp.").)

## Legal Standards

### I.   Venue

Under the so-called federal "venue statute," 28 U.S.C. §
1391, a particular judicial district is the proper venue for a
civil action if it is: "(1) a judicial district in which any
defendant resides, if all defendants are residents of the State in
which the district is located; (2) a judicial district in which a
substantial part of the events or omissions giving rise to the
claim occurred, or a substantial part of property that is the
subject of the action is situated; or (3) if there is no district
in which an action may otherwise be brought as provided in this
section, any judicial district in which any defendant is subject

4

to the court's personal jurisdiction with respect to such action."
28 U.S.C. § 1391(b)(1)-(3).

"On a motion to dismiss a complaint under Rule 12(b)(3)
for improper venue, 'the plaintiff bears the burden of
establishing that venue is proper.'"  *Cold Spring Harbor Lab. v.
Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011)
(quoting *French Transit v. Modern Coupon Sys.*, 858 F.Supp. 22, 25
(S.D.N.Y.1994)).  Where the court relies on the pleadings and
affidavits to adjudicate the motion to dismiss, "the plaintiff
need only make a *prima facie* showing of venue." *Gulf Ins. Co. v.
Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (quoting *CutCo
Indus. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir.1986))
(alteration omitted).  If the court deems the action was brought
in an improper venue, the court "shall dismiss, or if it be in the
interest of justice, transfer [the] case to any district or
division in which it could have been brought."  28 U.S.C. §
1406(a).  In deciding the motion to dismiss, the court "view[s]
all the facts in a light most favorable to [the] plaintiff."
*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

## II.  Transfer

Even when venue is proper, "[f]or the convenience of
parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district or

division where it might have been brought . . . ."  28 U.S.C. § 1404(a).

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). "Among the factors to be considered in determining whether to grant a motion to transfer venue 'are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.'"  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair*, 462 F.3d at 106).  Courts also consider "the forum's familiarity with the governing law and "trial efficiency and the interests of justice, based on the totality of the circumstances." *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006).  "There is no strict formula for the application of these factors, and no single factor is determinative." *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 250 (E.D.N.Y. 2010).

6

### III. Stay

"Incidental to the Court's power to control its docket is its broad power to stay proceedings in order to promote judicial economy and fairness to the litigants." *Galati v. Pharmacia & Upjohn Co.*, No. 10-cv-3899, 2011 WL 2470047, at *1 (E.D.N.Y. June 17, 2011). "In order to promote judicial economy, if competing cases are filed in two federal courts, 'the general principle is to avoid duplicative litigation.'" *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "The general rule in th[e Second] Circuit is that, as a principle of sound judicial administration," where competing lawsuits are filed, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (quotation and citations omitted). "In deciding between competing jurisdictions, it has often been stated that the balancing of convenience should be left to the sound discretion of the district courts." *Id.*

7

## Discussion

### I.   Motion to Dismiss for Improper Venue

Defendants argue that venue in this court is improper because KDE Equine's workforce is transitory, and the employees work in various locations throughout the year, with "several" of them residing "mainly outside of New York for significant periods of the year."  (Mot. at 6-7.)  This argument is unavailing.

The DOL must make only a *prima facie* showing that venue in the Eastern District of New York is proper, *Glasbrenner*, 417 F.3d at 355, and at this stage, the court must construe all facts in a light most favorable to the DOL, *Phillips*, 494 F.3d at 384. Venue is proper in the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  Thus, "in a federal FLSA overtime wages case where the defendant is [an employer]," even if the employer is not subject to personal jurisdiction in a judicial district, that district is still a proper venue if "a substantial part of the events or omissions giving rise to this claim occurred" there.  *Marcus v. Am. Contract Bridge League*, 562 F. Supp. 2d 360, 363 (D. Conn. 2008).

Here, the complaint sufficiently articulates that a substantial part of the events giving rise to the alleged FLSA

8

violations took place in the Eastern District of New York.  The
DOL alleges that, in addition to employees working occasionally at
Saratoga Race Course and Aqueduct Racetrack (the latter of which
is in the Eastern District of New York), Defendants operate a
"year-round" training stable at Belmont Park Race Track in Elmont,
New York, located in the Eastern District of New York.  (Compl. ¶
9.)  Throughout the complaint, the DOL alleges only violations
that occurred in New York.  For example, the DOL specifically
alleges that "Defendants' hot walkers and groomers in New York
regularly work" in excess of 40 hours per week.  (*Id.* at ¶ 39; *see
generally* ECF No. 24-1, Declaration of Lisa Mikita ("Mikita
Decl.").)  The alleged violations stem directly from work
performed at the three race tracks in New York, two of which are
in the Eastern District.  (*See, e.g.*, Compl. ¶ 62 ("Defendants
paid this employee at a regular rate . . . well below the
applicable New York state minimum wage"); ¶ 71 ("Defendants' H-2B
employees in New York regularly worked in excess of 40 hours in a
week but Defendants did not pay premium pay").)

      Moreover, the record at this stage of the litigation
reflects that Defendants have a significant workforce based in
the Eastern District of New York.  As part of its investigation,
the DOL requested certain records and information from
Defendants, including contact information for Defendants'

employees.  (Mikita Decl. ¶ 9.)  Defendants' counsel responded by email in January 2018, stating: "Most of the hourly employees reside at the housing provided at Belmont Park."  (*Id.* at ¶ 10.) Defendants then provided the DOL a list of 113 employees of "KDE Equine LLC –NY," all of whom, except for two, had addresses in New York.  (*Id.* at ¶ 11.)

The DOL has thus made a *prima facie* showing that venue is proper in this court, because a significant amount of the work giving rise to the alleged violations was performed in this district.  *See Holmes v. Romeo Enterprises, LLC*, No. 15-cv-3915, 2015 WL 10848308, at *2 (S.D.N.Y. Nov. 2, 2015) (venue proper where "alleged overtime hours" were worked); *Marcus*, 562 F. Supp. 2d at 363.  Defendants' motion concedes that "the workers in this suit work in New York."  (Mot. at 4.)  Defendants' argument that its employees *also* worked in other locations throughout the year (*see id.*) is not enough for the court to find that venue is not proper.  The DOL's complaint is solely focused on the violations that occurred in this district, i.e., work that occurred in New York for which Defendants allegedly did not comply with the FLSA. Given Defendants' year-round presence at Belmont and part-time presence at one other track in the Eastern District of New York, the court finds that the DOL has sufficiently alleged that a

substantial amount of work giving rise to the cause of action was performed in the Eastern District of New York.

Accordingly, Defendants' motion to dismiss is denied.

## II.  Motion to Transfer to the Western District of Kentucky

In the alternative, Defendants argue that this case should be transferred to the Western District of Kentucky, due to the policy considerations favoring resolution of related claims by the same tribunal, and for the convenience of the parties and witnesses.  (*See* Mot. at 8–17.)

"In determining whether to transfer venue, courts examine (1) whether the action could have been brought in the proposed transferee forum; and (2) whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice."  *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004).

### A. Whether this Action Could Have Been Brought in the Western District of Kentucky

Regarding the first prong, the DOL argues that Defendants have not met their burden to show that venue would have been proper in the Western District of Kentucky.  (Opp. at 9–10.) The court agrees.  Defendants' motion asserts in a conclusory fashion that "[t]his action should have been filed in the

11

W.D.K.Y." (Mot. at 6.)  This assertion finds no support in the available record.

Under the first possible source of venue set forth in the federal venue statute, an action may be brought in a district where *all* of the defendants are residents.  28 U.S.C. § 1391(b)(1).  Defendants in this case do not all reside in the Western District of Kentucky.  For purposes of venue, natural persons, including defendant Mr. Asmussen, "shall be deemed to reside in the judicial district in which that person is domiciled."  28 U.S.C. § 1391(c)(1).  Mr. Asmussen is domiciled in Texas.  (ECF No. 23-1, Declaration of Clark O. Brewster ("Brewster Decl."), ¶ 32.)  Thus, venue does not lie in the Western District of Kentucky under Section 1391(b)(1) of the venue statue, because not all Defendants reside there.

Venue is also appropriate in a district where a "substantial part" of the events or omissions leading to the cause of action took place.  28 U.S.C. § 1391(b)(2); *see Gulf Ins. Co.* 417 F.3d at 354.  As discussed above, the allegations in the complaint primarily occurred in New York, to New York-based employees, by an entity describing itself as "KDE Equine LLC – NY."  Defendants have not alleged any events, let alone that a substantial part of all events, took place in the Western District of Kentucky.

12

Even if there is some overlap between KDE Equine's employees in Kentucky and its employees in New York, the overlap appears to be negligible.  There are 270 total employees at issue across both the Kentucky action and this case; of those 270 employees, the DOL represents that only five, or less than two percent, worked in both Kentucky and New York, and thus appear in both lawsuits.  (Opp. at 5, 12 n.9.)  Defendants do not argue otherwise.  (Reply at 1 ("[T]here are at least five workers who have overlapping claims in both lawsuits.").)  Five employees also working in Kentucky is not substantial enough to establish venue for this case.  *See Justiniano v. First Student Mgmt. LLC*, No. 16-cv-2729, 2017 WL 1592564, at *7 (E.D.N.Y. Apr. 26, 2017) (four out of 150 relevant employees working in a district was not a "substantial" connection for purposes of venue).

Because Defendants have failed to show that venue would have been proper in the Western District of Kentucky, the motion to transfer under Section 1404(a) is denied.

### B. The Convenience Factors

Even if venue for this action were proper in the Western District of Kentucky, Defendants also fail to meet the second prong required under Section 1404(a).  The second prong consists of a multi-factor balancing test, in which no single factor is

13

dispositive.  *See Rindfleisch*, 752 F. Supp. 2d at 250.  The
factors considered by the court are discussed below.  On balance,
they weigh against a transfer of this action.

### 1. Plaintiff's Choice of Forum

The first factor, the plaintiff's choice of forum,
weighs against transfer.  The DOL filed this action in this
district, and a "plaintiff's choice of forum is generally
accorded great weight and should not be disturbed unless other
factors weigh strongly in favor of transfer."  *U.S. ex rel. New
York ex rel. Rold v. Raff & Becker, LLP*, No. 11-cv-6374, 2014 WL
1278136, at *5 (E.D.N.Y. Mar. 27, 2014).

### 2. Convenience of Witnesses

The second factor, convenience for the potential
witnesses, is often considered to be the most important when
evaluating whether to transfer an action.  *See EasyWeb
Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 350
(E.D.N.Y. 2012).  Courts must not only weigh the number of
witnesses who would be convenienced or inconvenienced by a given
venue, but also the materiality of their potential testimony.
*See Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282,
286 (S.D.N.Y. 2004).  Most of the material testimony in this
case will likely be provided by witnesses from New York.

Defendants argue that the current forum will inconvenience Mr. Asmussen (who resides in Texas), Scott Blasi (a KDE Equine trainer residing in Indiana, who primarily works in Kentucky), Pete Belanto (a KDE Equine accountant residing in California), two Kentucky-based DOL investigators, and the KDE Equine employees who worked in both Kentucky and New York. (Mot. at 10-13; *see* Brewster Decl. ¶ 32.)  Though these witnesses do not reside in New York, many of them do not reside in Kentucky, either.  Nor is it persuasive for Defendants to argue that their own employees would be inconvenienced by having to travel to New York, when Defendants are clearly engaged in substantial business operations in New York.

On the other hand, transferring this case to the Western District of Kentucky would make it difficult for Defendants' hourly workers to testify.  Those workers, who by Defendants' own admission mostly reside at Belmont Park in Elmhurst, New York (*see* Mikita Decl. ¶ 10), are the alleged victims of the FLSA violations, and testimony from at least some of them would be necessary as part of discovery and at trial.  A transfer would also be inconvenient for the DOL investigators based in New York.  While Defendants assert that two investigators are based in Kentucky, the Defendants' pay

practices in New York were primarily investigated by the DOL's Long Island District Office.  (*See id.* at ¶ 4.)

Therefore, most of the material witnesses are either based in the Eastern District of New York, or are capable of appearing in the Eastern District of New York.

### 3. Location of Documents and Sources of Proof

The parties agree that the third factor, the location of the relevant documents and the sources of proof, should not play a significant role in this analysis.  (*See* Mot. at 13; Opp. at 17.)  "In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly."  *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008).  Accordingly, this factor is neutral.

### 4. Convenience of Parties

Defendants argue that the convenience factor is neutral, because of the ease with which the parties can travel by air.  (*See* Mot. at 13.)  The DOL contends that a transfer to the Western District of Kentucky would be inconvenient, because the DOL's primary investigator of KDE Equine's operation in New York is based in New York.  (Opp. at 16-17.)  The DOL presumably chose to file suit in this district at least in part because it was the most convenient forum, and "[a] transfer of venue should

not merely shift the burden of inconvenience from one party to another." *Schwartz v. Marriott Hotel Servs., Inc.*, 186 F. Supp. 2d 245, 250 (E.D.N.Y. 2002).  As discussed, Mr. Asmussen will be required to travel regardless of whether this action continues in this district or in the Western District of Kentucky, so there is no reason to inconvenience the DOL, particularly in light of Defendants' year-round presence in this district.

### 5. The Locus of Operative Facts

Although "in a nationwide FLSA action . . . it is often difficult to fix a single locus of operative facts, . . . courts have concluded that operative facts may be found at the locations where employees worked, notwithstanding allegations that a uniform corporate policy caused the FLSA violations." *Flood v. Carlson Restaurants Inc*., 94 F. Supp. 3d 572, 579 (S.D.N.Y. 2015); *see Bukhari v. Deloitte & Touche LLP*, No. 12-cv-4290, 2012 WL 5904815, at *5 (S.D.N.Y. Nov. 26, 2012) ("the locus of operative facts is the location of the alleged violations . . . not the corporate headquarters").

The locus of operative facts in this case very clearly lies in the Eastern District of New York, where, as discussed above, almost all of the employees in question worked for significant periods of time and where the alleged underpayment occurred.  Thus, even if there may have been a broader policy

that gave rise to the alleged violations in New York, this
factor weighs against a transfer to the Western District of
Kentucky.

### 6. Ability to Compel Attendance of Witnesses

Defendants argue that certain key witnesses, such as
the KDE Equine employees mentioned above, live more than 100
miles outside of this court's jurisdiction.  *See* Fed. R. Civ. P.
45(c)(1) ("[A] court generally cannot issue a subpoena that
would compel a non-party witness to travel more than 100
miles.")  However, many of those witnesses also live more than
100 miles from the Western District of Kentucky.  This factor,
therefore, is neutral.

### 7. Relative Means of the Parties

"A party arguing for or against a transfer because of
inadequate means must offer documentation to show that transfer
(or lack thereof) would be unduly burdensome to his finances."
*Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 331
(E.D.N.Y. 2006) (quoting *Federman Assocs. v. Paradigm Medical
Indus., Inc.*, No. 96-cv-8545, 1997 WL 811539, *4 (S.D.N.Y.
Apr.8, 1997)). Defendants do not contend that they lack the
means to appear in the Eastern District of New York, and have
provided no documentation suggesting as much.  The fact that
Defendants' have the means to operate a substantial portion of

18

their business in this district suggests they have the means to litigate in this district.

### 8. Forum's Familiarity with the Governing Law

Both parties agree that this factor is neutral, given that "[f]amiliarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.,* 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006); (*see* Mot. at 14; Opp. at 18). The court agrees, as both proposed venues are federal courts capable of applying federal labor law.

### 9. Trial Efficiency and the Interests of Justice

Defendants argue that it would be more efficient to litigate this case in the Western District of Kentucky because there is a related case currently pending there. (*See* Mot. at 15-16.) The court does not agree that the existence of the Kentucky action compels a transfer of this case. Although both this case and the Kentucky action involve FLSA claims against Defendants, they concern different groups of employees who were allegedly underpaid at different times.

Though the eventual adjudication of the Kentucky action, which is already at an advanced stage, may be relevant to this case, there is no reason that it would be more efficient

19

to have these separate claims heard by the same court.[2]  The Secretary of Labor has the authority to bring separate suits for different violations of the same law, and *res judicata* does not generally apply in such cases.  *See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) ("If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion."); *NLRB v. United Technologies Corp.,* 706 F.2d 1254, 1259–60 (2d Cir.1983) ("[T]he circumstance that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same claim that was litigated in the first[.]").

Defendants also argue that this court's docket is overloaded and that judges in the Eastern District of New York face a substantially higher average caseload than our colleagues in the Western District of Kentucky. (Mot. at 16.)  Though this court's caseload arguably could weigh in favor of transferring this case, it does not overcome the other factors already discussed.  *See Neil Bros.*, 425 F. Supp. 2d at 334 ("Although

---

[2] The court also notes that the Kentucky action is not the only prior relevant interaction between these parties.  In addition, the parties previously entered into a consent decree requiring Defendants to comply with the FLSA.  (Compl. ¶¶ 80–81.)  That consent decree was filed in this district and approved by the late Judge Wexler in January 2013. (*Id.; see* Case No. 12-cv-6368.)  That consent decree is relevant to the DOL's argument that Defendants acted willfully in violating the FLSA.

certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight.") (quoting *Miller v. Bombardier Inc.*, No. 93-cv0376, 1993 WL 378585, at *5 (S.D.N.Y. Sept.23, 1993)).

Taken together, the interests of trial efficiency and justice, like nearly all of the other relevant factors, weigh against transfer.  Accordingly, even if Defendants could show that the Western District of Kentucky were a proper venue for this action, the balance of interests weigh against transferring the case.  Defendants' motion to transfer is, likewise, denied.

### III. Motion to Stay Proceedings

Defendants argue that, in the alternative, the court should stay this case pending the outcome of the Kentucky action, based on the "first-filed" rule.  (Mot. at 17-18.)

The "first-filed" rule was intended to prevent "mirror lawsuits," where two parties seeking declaratory judgements on the same dispute would rush to file in their favored forums. *See Bukhari*, No. 12-cv-4290, 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012); *N.Y. Marine,* 599 F.3d at 112.  The doctrine has also been applied in the context of class action lawsuits, where two potentially overlapping classes file in different courts, against the same defendant.  *See Wyler-Wittenberg v. MetLife*

21

*Home Loans, Inc.*, 899 F. Supp. 2d 235, 250 (E.D.N.Y. 2012). Application of the "first-filed" rule may also be appropriate when there are similar legal issues, including when two suits are brought against the same defendant under the FLSA. *See Pippins v. KPMG LLP,* No. 11-cv-0377, 2011 WL 1143010, at *2 (S.D.N.Y. Mar. 21, 2011); *TateSmall v. Saks Inc.,* No. 12-cv-1008, 2012 WL 1957709, at *4 (S.D.N.Y. May 31, 2012).

The two cases here involve the same parties and allege violations of the FLSA. (*See generally* Compl.; 15-cv-562, ECF No. 43, Amended Complaint.) The allegations in both cases are that KDE Equine failed to pay overtime to hot walkers and groomers, instead paying flat rate and lump sum wages for fluctuating work hours, and failed to keep adequate records. (*Id.*) In addition, both cases seek liquidated damages and back pay for workers. (*Id.*) The Kentucky action and this case also allege Defendants violated a consent decree approved in 2013 in the Eastern District of New York. (*Id.*) The Kentucky action, which is currently at an advanced stage and awaiting a ruling on the merits from the court, could potentially reach legal conclusions pertinent to this action, including whether paying wages at a fixed rate for variable work hours is a violation of the FLSA.

Despite the similarities between the cases, there are also some noteworthy differences.  The Kentucky action was brought in 2015, alleging violations from 2013 to 2015, whereas this case was brought in 2019, alleging violations from 2016 to the present.  (*Id.*)  Though both cases allege underpayment of the same types of employees, the two groups of employees are almost entirely distinct and worked at different locations.  This case also contains distinct legal allegations about Defendants' failure to pay H-2B visa employees the proper overtime rate. (Compl. ¶ 34.)

The situation here is somewhat analogous to a class action, with claims brought on behalf of distinct groups who have similar claims.  However, unlike a class action, a case brought by the DOL does not carry a real risk of overlapping claims, given that there is no "opt-in" mechanism, and the Secretary of Labor can amend the list of employees included in the complaint. (*See* Opp. at 20 n.13.)

"As an alternative to dismissal, a moving party may raise the 'first-filed' rule as grounds for the court [to] order a stay in a subsequent suit." *Wyler-Wittenberg*, 899 F. Supp. 2d at 247.  "[T]he 'first filed' rule is not a hard and fast rule, but rather, subject to the discretion of the district court judge." *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d

269, 292 (E.D.N.Y. 2010).  The court "should consider which course of action will most likely avoid duplication of judicial effort, avoid vexatious litigation in multiple forms, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication." *Andreas-Moses v. Hartford Fire Ins. Co.*, No. 16-cv-1387, 2017 WL 5634709, at *3 (N.D.N.Y. Oct. 30, 2017) (quoting *Wyler-Wittenberg*, 899 F. Supp. 2d at 247) (alteration omitted).

      The court finds that a stay is not appropriate at this time.  Although there may be findings of fact and law reached in the Kentucky action, including whether the lump sum and fixed rate payment practices used by Defendants violated the FLSA, those findings are not pertinent to the parties' immediate ability to conduct discovery.  Given that there are employees and documents relevant to this case, which were not relevant to the Kentucky action, there is no reason to continue to delay relevant discovery.  Accordingly, discovery in this case will not be stayed.  If the Kentucky action remains pending once discovery in this case is completed, the court would entertain a renewed motion to stay these proceedings at that time.

## Conclusion

For the foregoing reasons, Defendants' motion is DENIED. Defendants are directed to file an answer to the DOL's complaint in accordance with Federal Rule of Civil Procedure 12. In addition, once Judge Boom issues a decision on the merits in the Kentucky action, the parties shall jointly update this court by filing a letter within seven business days of Judge Boom's Order, including the parties' view as to how the Order affects this case.

The Clerk of Court is respectfully directed to update the docket in this case to reflect that Eugene Scalia, who is now the Secretary of Labor, should be substituted as the plaintiff pursuant to Federal Rule of Civil Procedure 25(d).

**SO ORDERED.**

Dated:     Brooklyn, New York
           July 28, 2020

_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge