UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MARTIN J. WALSH,[1] Secretary of Labor,
United States Department of Labor,

*Plaintiff*,

v.

KDE EQUINE, LLC d/b/a Asmussen Racing
Stables, and STEVE ASMUSSEN,
Individually and as President,

*Defendants*.

Consent Judgment

No. 19-cv-3389-KAM-SJB

**<u>CONSENT JUDGMENT</u>**

Plaintiff MARTIN J. WALSH, the Secretary of Labor, has filed his complaint, and Defendants KDE EQUINE, LLC d/b/a Asmussen Racing Stables ("Corporate Defendant"), and STEVE ASMUSSEN (together, "Defendants") appeared by Counsel, and agree to the entry of this Consent Judgment without contest.

Defendants acknowledge that they have notice of and understand the provisions of this Consent Judgment; acknowledge their responsibilities pursuant to this Consent Judgment; and acknowledge that they may be subject to sanctions in contempt of this Court if they fail to comply with the provisions of this Consent Judgment.

I.    Defendants submit to the jurisdiction of this Court over them and over the subject matter of this action.[2] Defendants admit that this Court has the authority to enter and

---

[1] Pursuant to <u>Federal Rule of Civil Procedure 25(d)</u>, Martin J. Walsh is automatically substituted as Plaintiff.

[2] The parties understand and agree that this action involves Defendants' operations in New York State, and that Defendants' obligations under this Consent Judgment apply only to Defendants' operations in New York State.

enforce this Order and that this Court is the most appropriate venue for any enforcement action that may be required as a result of this Judgment.

II.     Corporate Defendant admits that from at least June 7, 2016 through at least September 8, 2020 ("the relevant time period"), it was an employer, within the meaning of Section 3(d) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.) ("the Act" or "the FLSA"), 29 U.S.C. § 203(d), of groomers and hotwalkers in New York State.

III.    Defendant Steve Asmussen admits that during the relevant time period he was an employer, within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), of the Corporate Defendant's groomer and hotwalkers employees in New York State.

IV.    The Secretary has alleged that during the relevant time period, Defendants violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the FLSA by failing to pay their employees in New York State overtime wages for all hours worked, and failing to make, keep, and preserve adequate and accurate records.

V.     The Secretary has alleged that during the relevant time period in New York State, Defendants did not keep complete and accurate wage and hour records as required by the Act.

VI.    The Secretary has alleged that during the relevant time period in New York State, Defendants did not pay certain of their employees overtime at one and one-half times the regular hourly rate for hours in excess of forty per week as required by the Act.

VII.   In a related administrative matter, the Deputy Administrator of the Wage and Hour Division of the U.S. Department of Labor ("Administrator"), pursuant to Section 16(e)(2) of the Act, 29 U.S.C. § 216(e)(2), referred to the DOL Office of Administrative

Law Judges Defendants' notice of contest and request for hearing on the Administrator's assessment of FLSA civil money penalties ("CMPs"), pursuant to implementing regulations at 29 C.F.R. Parts 578 to 580. Concurrent with the Parties' execution of this Consent Judgment, the parties have executed a separate Consent Order to resolve the FLSA CMP administrative matter, currently pending before the DOL Office of Administrative Law Judges as Case No. 2021-FLS-00007. In that compromise settlement, Defendants have agreed to pay $46,200.00 in FLSA CMPs, separate and apart from the compromise settlement amount of $563,800.00 in FLSA back wages and liquidated damages described in Sections 2 and 4 of this Consent Judgment.

It is, therefore, upon motion of the attorneys for Plaintiff and for cause shown ORDERED that:

1.   Defendants, their officers, employees, agents, and all persons acting or claiming to act in Defendants' behalf and interest, be, and hereby are, permanently enjoined and restrained from violating the provisions of Sections 6, 7, 11(c), 15(a)(2), 15(a)(3), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) ("the Act"), in any of the following manners:

    a. Defendants shall not, contrary to Section 6 of the Act, pay to any of their employees who in any workweek are engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, wages at rates less than those which are now, or which may in the future become, applicable under Section 6 of the Act.

b. Defendants shall not, contrary to Section 7 of the Act, employ any of their employees in any workweek for workweeks longer than the hours now, or which in the future become, applicable under Sections 7 and 15(a)(2) of the Act, unless the employees receive compensation for their employment in excess of the prescribed hours at rates not less than one and one-half times the employees' regular rates, as required by Section 7 of the Act.

c. Defendants shall make, keep, and preserve adequate records of their employees and of the wages, hours, and other conditions and practices of employment maintained by them as prescribed by the Regulations issued pursuant to Section 11(c) of the Act and found at 29 C.F.R. Part 516.

d. Defendants shall not discharge or take any retaliatory action against an employee because the employee engaged in or is believed to have engaged in any of the following activities:

    i. Discloses, protests, or threatens to disclose or protest, to a supervisor, or to a public agency, any activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of the Act or a rule or regulation promulgated pursuant to the Act;

    ii. Provides information to, or testifies before, any public agency or entity conducting an investigation, hearing or inquiry into any alleged violation of the Act, or a rule or regulation promulgated pursuant to the Act, by the employer or another employer with whom there is a business relationship; or

4

        iii.  Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of the Act, or a rule or regulation promulgated pursuant to the Act.

2. Pursuant to the parties' compromise agreement that unpaid overtime back wages shall be paid to the employees listed on Exhibit A, which is attached to this Consent Judgment, in the amount of $281,900.00, plus an equal additional amount of liquidated damages of $281,900.00, for a total compromise settlement amount of $563,800.00, it is ORDERED that Defendants and all persons acting on their behalf are enjoined and restrained from withholding the payment of $281,900.00 in unpaid overtime back wages due Defendants' employees listed in Exhibit A of this Consent Judgment. Further, Defendants shall pay a total of $281,900.00 in liquidated damages due Defendants' employees listed in Exhibit A. These payments shall be made by Defendants in accordance with Section 4 of this Consent Judgment and shall compromise and settle all monetary claims asserted herein.

3. Defendants' payment of $563,800 in back wages and liquidated damages shall be in addition to the FLSA CMPs that Defendants shall pay pursuant to the Consent Order that the Parties have concurrently executed to resolve the pending FLSA CMP matter pending before the DOL Office of Administrative Law Judges, Case No. 2021-FLS-00007.

4. The provisions of this Consent Judgment relative to back wages payments and liquidated damages payments shall be deemed satisfied, when Defendants fully comply with the terms of payment set forth below:

        a.  Within 30 calendar days after issuance of an order entering this Consent

Judgment, Defendants shall send by overnight mail a $563,800 cashier's check or certified check, payable to "Wage and Hour Division – Labor" with "Case No. 1808222" written on the face of the check. Defendants shall send the check to the following address:

U.S. Department of Labor
Wage & Hour Division NE RO
1835 Market Street
Mailstop WHD/19
Philadelphia, PA 19103-2968

b. Defendants shall also mail a copy of the payment and cover letter to:

Elaine Guzzo, Assistant District Director
U.S. Department of Labor
Wage & Hour Division, Long Island District Office
1400 Old Country Road, Suite 410
Westbury, NY 11590

5. The Secretary shall allocate and distribute the back wages and the liquidated damages described in Section 4, less any legally required deductions, to the employees named in Exhibit A, or to their estates if that be necessary, and any money not so paid within a period of three years from the date of its receipt, because of an inability to locate the proper persons or because of their refusal to accept it, shall then be deposited in the Treasury of the United States, as miscellaneous receipts, pursuant to 29 U.S.C. § 216(c). Defendants remain responsible for paying the employers' share of any applicable taxes to the appropriate local, state, and federal revenue authorities.

6. Within 45 calendar days after the date of entry of this Consent Judgment, Defendants shall provide the Secretary the social security number, if such is available, and all last known addresses, phone numbers, and email addresses of each former or current employee listed in Exhibit A of this Consent Judgment. Defendants shall also identify whether each

employee on Exhibit A is a current or former employee.

7.  In light of Defendants' request that the U.S. Department of Labor's Wage and Hour Division (WHD) distribute checks to current employees listed on Exhibit A, rather than Defendants handling the distribution, Defendants agree to permit WHD personnel to meet with Defendants' current employees at Defendants' operations in Elmont and Saratoga, New York, at mutually agreeable date(s)/time(s), as necessary to enable WHD to accomplish the check distribution. Defendants understand that multiple visits by WHD personnel will be necessary, e.g., an initial visit or visits to collect the necessary signed paperwork from employees, and then a subsequent visit or visits to deliver the individual checks after they are prepared. The parties agree to work together in good faith in the spirit of maximizing the success of check distribution to the employees on Exhibit A.

8. Defendants, and anyone acting on their behalf, shall not in any way directly or indirectly, demand, require or accept any of the back wages or liquidated damages from any person listed on Exhibit A.  Defendants, and anyone acting on their behalf, shall not threaten or imply that adverse action will be taken against any person because of his or her receipt of funds due under the provisions of this Consent Judgment or the Act.

9. Within 30 calendar days after the entry of this Consent Judgment, Defendants shall display in conspicuous places throughout each of their establishments for their employees' viewing the poster "Employee Rights Under the Fair Labor Standards Act" in Spanish and English issued by, and available on the website of, the U.S. Department of Labor (currently available at https://www.dol.gov/agencies/whd/posters). Within 30 calendar days after the entry of this Consent Judgment, Defendants shall also display in conspicuous places throughout each of their establishments for their employees' viewing the factsheet

"Overtime Pay Requirements of the FLSA," in Spanish and English issued by, and available on the website of, the U.S. Department of Labor. (currently available at https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs23.pdf; https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs23span.pdf).

10. Defendants shall distribute Spanish and English copies of the flyer entitled "Employee Rights under the Fair Labor Standards Act" (attached hereto as Exhibit B) and the factsheet entitled "Overtime Pay Requirements of the FLSA" (attached hereto as Exhibit C) to each current employee within 30 calendar days after the date of entry of this Consent Judgment. Thereafter, Defendants shall provide the current versions (as issued and updated by the U.S. Department of Labor and currently available on the Department's website at the links referenced in the Section) of the "Employee Rights under the Fair Labor Standards Act" poster and the "Overtime Pay Requirements of the FLSA" factsheet to any new employee who is hired by Defendants within three years following entry of this Consent Judgment, at the time of the employee's hire.

11. Defendants shall implement the following provisions to ensure their compliance with the Act:

   a. **Timekeeping and Payroll.** Defendants shall implement and utilize an electronic time clock to ensure that all hours worked by all non-exempt employees at each of Defendants' locations are recorded accurately.

      i. Defendants shall complete installation of an electronic time clock at each of Defendants' locations within 60 calendar days after the date of entry of this Judgment.

ii. Within 30 calendar days after the installation of an electronic time clock or 14 calendar days after employees' arrival at their place of employment, whichever is later, Defendants at their expense will provide training for all employees on the proper use of the electronic time clock in languages understandable to the employees (including but not limited to English and Spanish) and will pay employees for that training time in compliance with the Act. Defendants will engage a professional interpreter to ensure the accuracy and completeness of the training provided in Spanish. Defendants will maintain records of the attendance of all personnel at any trainings conducted pursuant to this paragraph, and will provide copies of the attendance records to the Secretary upon request.

iii. Defendants shall not edit or alter employees' hours worked in the time clock system in any way that does not accurately reflect employees' actual hours worked.

iv. Defendants shall not request, require, or otherwise cause employees to perform work "off the books" (not recorded in the electronic time clock or otherwise recorded pursuant to Section 10(b)(v) or (vi) of this Consent Judgment)).

v. In the event that the electronic timekeeping system is temporarily nonoperational, or that employees perform work for Defendants at locations where no timekeeping system is installed (e.g., during employee travel), or if employees perform any work for Defendants not

recorded in the electronic time clock, Defendants shall use other means for keeping accurate records of all hours worked by their employees in accordance with the Act and 29 C.F.R. Part 516, and for compensating employees for all hours worked in accordance with the Act.

**b.  Training for Defendants' assistant trainers.**

    i.  Within 60 calendar days after entry of the Consent Judgment Defendants shall train all of their assistant trainers on how to properly record hours worked, how to calculate and record breaks and meal periods, what constitutes compensable time under the Act, the minimum wage and overtime provisions of the Act, and on the rights of workers to engage in activities protected by the Act without fear of retaliation. For a minimum of three years following the entry of the Consent Judgment Defendants agree to provide the same training to all newly hired or newly promoted assistant trainers within 60 calendar days after their start date in such positions, in consultation with the Compliance Consultant.  Any employee who is rehired will be considered a new hire for the purposes of the training requirements set forth in this Section. The parties understand and agree that appropriate training provided by legal counsel would comply with Defendants' training obligations pursuant to this Section.

    ii.  For a period of three years from the entry of this Consent Judgment, Defendants shall maintain a log of training certifications for all training provided pursuant to Section 10(c)(i), signed by the employees

receiving such training. Defendants shall produce the log to the Secretary within ten calendar days after the Secretary's written request.

12. Neither the commencement of this action nor the provisions of this Consent Judgment shall in any way affect, determine, or prejudice any and all legal rights of any employees of Defendants not listed on Exhibit A of this Consent Judgment, be they current or former employees, to file any action against defendants under section 16(b) of the Act or likewise for any current or former employee listed on Exhibit A of this Consent Judgment to file any action against Defendants under section 16(b) of the Act for any violations alleged to have occurred after September 8, 2020.

13. The Parties understand and agree that the above-captioned case, No. 19-cv-3389-KAM-SJB (E.D.N.Y.), is the only matter resolved through this Consent Judgment.

14. Each party will bear its own fees and other expenses incurred by such party in connection with any stage of this proceeding.

15. The Court retains jurisdiction over this matter for the purposes of enforcing this Consent Judgment.

IT IS SO ORDERED:

DATED:         September 13 , 2021
              Brooklyn, New York

                              Kiyo A. Matsumoto, USDJ
                              HONORABLE KIYO A. MATSUMOTO
                              UNITED STATES DISTRICT JUDGE

Defendants have appeared by the undersigned counsel and hereby consent to the entry of this Judgment.

11

KDE EQUINE, LLC d/b/a Asmussen Racing Stables, and STEVE ASMUSSEN

BY: _____

STEVE ASMUSSEN
As President

STEVE ASMUSSEN, Individually

BY: _____

CLARK O. BREWSTER, ESQ.
Brewster & DeAngelis, PLLC
2617 E. 21st Street
Tulsa, Oklahoma 74114
Phone: 918-742-2021
cbrewster@brewsterlaw.com
*Attorneys for Defendants*

KERRI LYN MAYNARD
Notary Public
Commonwealth of Kentucky
Commission Number KYNP25049
My Commission Expires Mar 8, 2025

12

STATE OF KENTUCKY )
                      :SS:
COUNTY OF SIMPSON )

On the 8TH day of SEPTEMBER, 2021 before me came **STEVE ASMUSSEN**, to me

known, who, being by me duly sworn, did depose and say that he is a duly authorized officer

of **KDE EQUINE, LLC d/b/a Asmussen Racing Stables, and STEVE ASMUSSEN,**

described in and which executed the foregoing instrument, that he signed his name thereto by

like order.

KERRI LYN MAYNARD
Notary Public
Commonwealth of Kentucky
Commission Number KYNP25049
My Commission Expires Mar 8, 2025

NOTARY PUBLIC

STATE OF KENTUCKY )
                      :SS:
COUNTY OF SIMPSON )

On the 8TH day of SEPTEMBER, 2021 before me came **STEVE ASMUSSEN**, to me

known and known to me to be the individual described in and who executed the foregoing

instrument and he duly acknowledged to me that he executed the same.

KERRI LYN MAYNARD
Notary Public
Commonwealth of Kentucky
Commission Number KYNP25049
My Commission Expires Mar 8, 2025

NOTARY PUBLIC

13

**Secretary v. KDE Equine LLC et al., 19-cv-3389-KAM-SJB**
**Consent Judgment – Exhibit A**

| | Employee Name | Back Wages (BW) | Liquidated Damages (LD) | Total - BW and LD |
|---|---|---|---|---|
| 1 | Abreu, Joshua | $647.44 | $647.44 | $1,294.88 |
| 2 | Adam, Stephen | $725.76 | $725.76 | $1,451.52 |
| 3 | Aguilar, Juana | $7,801.72 | $7,801.72 | $15,603.44 |
| 4 | Alvarez, Esvin | $38.81 | $38.81 | $77.62 |
| 5 | Andrade, Fernando | $2,430.93 | $2,430.93 | $4,861.86 |
| 6 | Appel, David | $257.70 | $257.70 | $515.40 |
| 7 | Aragon, Bertario | $3,262.38 | $3,262.38 | $6,524.76 |
| 8 | Aragon, Jorge | $1,191.67 | $1,191.67 | $2,383.34 |
| 9 | Aragon, Mateo Sanchez | $1,449.08 | $1,449.08 | $2,898.16 |
| 10 | Armenta, Jose | $646.57 | $646.57 | $1,293.14 |
| 11 | Atempa, Jorge | $1,836.66 | $1,836.66 | $3,673.32 |
| 12 | Ayala, Steven | $2,275.77 | $2,275.77 | $4,551.54 |
| 13 | Bacerra, Anna | $3,765.98 | $3,765.98 | $7,531.96 |
| 14 | Bahena, Omar D. | $498.26 | $498.26 | $996.52 |
| 15 | Banos, Kevin | $13.73 | $13.73 | $27.46 |
| 16 | Barragan, Maria | $1,244.14 | $1,244.14 | $2,488.28 |
| 17 | Becerra, Jose | $104.78 | $104.78 | $209.56 |
| 18 | Bencosme, Sammy | $39.31 | $39.31 | $78.62 |
| 19 | Berrios, David | $3,065.84 | $3,065.84 | $6,131.68 |
| 20 | Bonilla, Juan Antonio | $1,419.73 | $1,419.73 | $2,839.46 |
| 21 | Bowman, Christopher | $58.51 | $58.51 | $117.02 |
| 22 | Brown Jr., Dale | $281.68 | $281.68 | $563.36 |
| 23 | Buitrago, Christian | $61.37 | $61.37 | $122.74 |
| 24 | Cabezudo, Emanuel | $205.46 | $205.46 | $410.92 |
| 25 | Cadazos, Jose | $408.12 | $408.12 | $816.24 |
| 26 | Cakalovic, Esteban | $1,317.74 | $1,317.74 | $2,635.48 |
| 27 | Calderon, Ceaser | $8,166.77 | $8,166.77 | $16,333.54 |
| 28 | Calderon, Pedro | $658.67 | $658.67 | $1,317.34 |
| 29 | Camarillo, Adan R | $1,343.28 | $1,343.28 | $2,686.56 |
| 30 | Cano, Mario | $1,214.59 | $1,214.59 | $2,429.18 |
| 31 | Cardenas, Cesar | $517.10 | $517.10 | $1,034.20 |
| 32 | Cardenas, Eneida | $676.09 | $676.09 | $1,352.18 |
| 33 | Cardona, Ramiro | $2,242.71 | $2,242.71 | $4,485.42 |
| 34 | Carpintero, Catalina | $8,924.45 | $8,924.45 | $17,848.90 |
| 35 | Casso, Mirium | $99.09 | $99.09 | $198.18 |
| 36 | Castillo, Jose | $970.87 | $970.87 | $1,941.74 |
| 37 | Castrellon, Jairo | $182.50 | $182.50 | $365.00 |

14

|    | Employee Name | Back Wages (BW) | Liquidated Damages (LD) | Total – BW and LD |
|----|---------------|-----------------|-------------------------|-------------------|
| 38 | Castro, Hector | $296.93 | $296.93 | $593.86 |
| 39 | Cisneros, Alejandro | $3,723.49 | $3,723.49 | $7,446.98 |
| 40 | Cisneros, Alondra | $412.40 | $412.40 | $824.80 |
| 41 | Coble, James | $420.32 | $420.32 | $840.64 |
| 42 | Colon, Luis | $197.91 | $197.91 | $395.82 |
| 43 | Cuesta, Francisco Almante | $353.05 | $353.05 | $706.10 |
| 44 | De Jesus Perez, Efrain | $1,152.71 | $1,152.71 | $2,305.42 |
| 45 | De La Rosa, Ignacio | $2,796.12 | $2,796.12 | $5,592.24 |
| 46 | Delgado, Juan | $594.42 | $594.42 | $1,188.84 |
| 47 | Dema, Robbie | $27.37 | $27.37 | $54.74 |
| 48 | Diego Omar, Moreno | $125.23 | $125.23 | $250.46 |
| 49 | Edwards, Curry | $121.77 | $121.77 | $243.54 |
| 50 | Esparza, Ma Zoila | $228.67 | $228.67 | $457.34 |
| 51 | Evans, Billy | $38.81 | $38.81 | $77.62 |
| 52 | Evans, Katelyn | $159.39 | $159.39 | $318.78 |
| 53 | Figueroa, Maria | $285.61 | $285.61 | $571.22 |
| 54 | Fraase, Mark | $167.92 | $167.92 | $335.84 |
| 55 | Fragoso, Melquiades | $106.41 | $106.41 | $212.82 |
| 56 | Franco, Jose | $1,138.96 | $1,138.96 | $2,277.92 |
| 57 | Franco, Xenia | $1,108.86 | $1,108.86 | $2,217.72 |
| 58 | Franco, Xiomara | $95.99 | $95.99 | $191.98 |
| 59 | Frisco, Diane | $235.39 | $235.39 | $470.78 |
| 60 | Garcia, Adrian Rodriguez | $151.23 | $151.23 | $302.46 |
| 61 | Garcia, Braulio | $3,073.65 | $3,073.65 | $6,147.30 |
| 62 | Garcia, Francisco | $129.04 | $129.04 | $258.08 |
| 63 | Garcia, Juan M | $889.61 | $889.61 | $1,779.22 |
| 64 | Garcia, Misael | $4,349.29 | $4,349.29 | $8,698.58 |
| 65 | Garcia, Ruben Lozano | $382.04 | $382.04 | $764.08 |
| 66 | Garcia, Ruben R. | $1,322.74 | $1,322.74 | $2,645.48 |
| 67 | Garzaro, Alejandro | $591.31 | $591.31 | $1,182.62 |
| 68 | Gibson, Danny | $829.56 | $829.56 | $1,659.12 |
| 69 | Giraldo, Hector | $68.54 | $68.54 | $137.08 |
| 70 | Godoy, Jose Luis | $566.63 | $566.63 | $1,133.26 |
| 71 | Gorostieta, Javier | $7,830.96 | $7,830.96 | $15,661.92 |
| 72 | Gutierrez, Idelberto | $3,310.62 | $3,310.62 | $6,621.24 |
| 73 | Hall, Rahim | $525.43 | $525.43 | $1,050.86 |
| 74 | Hernandez, Antonio | $391.98 | $391.98 | $783.96 |
| 75 | Hernandez, Bonita Rocha | $396.11 | $396.11 | $792.22 |
| 76 | Hernandez, Edgar Tomas | $3,621.12 | $3,621.12 | $7,242.24 |

| | Employee Name | Back Wages (BW) | Liquidated Damages (LD) | Total - BW and LD |
|---|---|---|---|---|
| 77 | Hernandez, Elmer | $1,262.09 | $1,262.09 | $2,524.18 |
| 78 | Hernandez, Mario | $1,457.86 | $1,457.86 | $2,915.72 |
| 79 | Hernandez, Ruben | $3,333.32 | $3,333.32 | $6,666.64 |
| 80 | Herrera, Efrain | $1,773.89 | $1,773.89 | $3,547.78 |
| 81 | Holassie, Raynau | $610.45 | $610.45 | $1,220.90 |
| 82 | Jackson, Madison | $266.98 | $266.98 | $533.96 |
| 83 | Jacuinde, Ricardo | $330.30 | $330.30 | $660.60 |
| 84 | Jhovany, Paredes | $31.42 | $31.42 | $62.84 |
| 85 | Jimenez, Ignacio | $4,413.43 | $4,413.43 | $8,826.86 |
| 86 | Juarez, Hernan | $39.31 | $39.31 | $78.62 |
| 87 | King, Edward | $35.78 | $35.78 | $71.56 |
| 88 | Labra, Fabian Q | $488.04 | $488.04 | $976.08 |
| 89 | Labra, Pedro | $1,897.18 | $1,897.18 | $3,794.36 |
| 90 | Lema, Luz | $2,217.39 | $2,217.39 | $4,434.78 |
| 91 | Lopez, Carlos Uribe | $674.98 | $674.98 | $1,349.96 |
| 92 | Lopez, Heriberto | $536.35 | $536.35 | $1,072.70 |
| 93 | Lopez, Mauricio Maya | $3,928.01 | $3,928.01 | $7,856.02 |
| 94 | Lopez, Yonatan Zarco | $140.36 | $140.36 | $280.72 |
| 95 | Lozano, Raymond | $2,243.77 | $2,243.77 | $4,487.54 |
| 96 | Luviano, Enrique | $124.32 | $124.32 | $248.64 |
| 97 | Mahir, Bridgit | $896.57 | $896.57 | $1,793.14 |
| 98 | Managault, Denise | $15.69 | $15.69 | $31.38 |
| 99 | Martinez, Alans | $39.57 | $39.57 | $79.14 |
| 100 | Matlala, Lorenzo | $570.95 | $570.95 | $1,141.90 |
| 101 | Montero, Enrique | $1,007.08 | $1,007.08 | $2,014.16 |
| 102 | Morales, Gerardo | $4,298.29 | $4,298.29 | $8,596.58 |
| 103 | Morales, Jose Victor | $236.55 | $236.55 | $473.10 |
| 104 | Morales, Veronica | $6,602.08 | $6,602.08 | $13,204.16 |
| 105 | Moreno, Diego | $3,825.63 | $3,825.63 | $7,651.26 |
| 106 | Moreno, Diego Omar | $1,036.34 | $1,036.34 | $2,072.68 |
| 107 | Moreno, Francisco | $11,196.87 | $11,196.87 | $22,393.74 |
| 108 | Moreno, Javier | $186.00 | $186.00 | $372.00 |
| 109 | Moreno, Juan Jesus | $3,085.03 | $3,085.03 | $6,170.06 |
| 110 | Moreno, Marcos | $1,224.19 | $1,224.19 | $2,448.38 |
| 111 | Munoz, Jose | $468.25 | $468.25 | $936.50 |
| 112 | Munoz, Leonel | $644.76 | $644.76 | $1,289.52 |
| 113 | Nelson Jr., Alfred | $20.19 | $20.19 | $40.38 |
| 114 | Nolasco, Juan Manuel | $3,518.98 | $3,518.98 | $7,037.96 |
| 115 | Nolazco, Juan | $4,477.16 | $4,477.16 | $8,954.32 |

| | Employee Name | Back Wages (BW) | Liquidated Damages (LD) | Total – BW and LD |
|---|---|---|---|---|
| 116 | Ordaz, Felipe | $911.93 | $911.93 | $1,823.86 |
| 117 | Ortiz, Xavier | $416.43 | $416.43 | $832.86 |
| 118 | Oseguera, Daniel | $1,306.25 | $1,306.25 | $2,612.50 |
| 119 | Osorio, Gilberto | $1,364.29 | $1,364.29 | $2,728.58 |
| 120 | Paltero, Mirna | $297.10 | $297.10 | $594.20 |
| 121 | Pantoja, Diego Armando | $18,225.03 | $18,225.03 | $36,450.06 |
| 122 | Paredes, Jhovany | $22.33 | $22.33 | $44.66 |
| 123 | Perez, Giovanni | $400.64 | $400.64 | $801.28 |
| 124 | Perez, Patricia | $983.07 | $983.07 | $1,966.14 |
| 125 | Perez, Selvin | $555.89 | $555.89 | $1,111.78 |
| 126 | Raez, Jorge | $89.57 | $89.57 | $179.14 |
| 127 | Ramirez, Adrian C. | $991.29 | $991.29 | $1,982.58 |
| 128 | Ramirez, Jesus | $4,338.66 | $4,338.66 | $8,677.32 |
| 129 | Ramirez, Jose | $9,801.98 | $9,801.98 | $19,603.96 |
| 130 | Ramirez, Jose Luis | $117.73 | $117.73 | $235.46 |
| 131 | Ramirez, Luis Alberto | $10,044.71 | $10,044.71 | $20,089.42 |
| 132 | Ramirez, Mario | $72.44 | $72.44 | $144.88 |
| 133 | Ramos, Oliver | $1,009.85 | $1,009.85 | $2,019.70 |
| 134 | Rawlins, Randolph | $44.98 | $44.98 | $89.96 |
| 135 | Rideout, Cecelia | $282.60 | $282.60 | $565.20 |
| 136 | Rivera, Donovan | $99.09 | $99.09 | $198.18 |
| 137 | Rivera, Javier | $22,183.92 | $22,183.92 | $44,367.84 |
| 138 | Rivera, Jose | $236.17 | $236.17 | $472.34 |
| 139 | Rivera, Maria | $1,063.37 | $1,063.37 | $2,126.74 |
| 140 | Rocha, Veronica | $49.58 | $49.58 | $99.16 |
| 141 | Rodriguez, Ricardo | $330.00 | $330.00 | $660.00 |
| 142 | Rodriguez, Ricardo N. | $1,216.78 | $1,216.78 | $2,433.56 |
| 143 | Salido, Laura | $109.50 | $109.50 | $219.00 |
| 144 | Sanchez, Humberto | $1,069.53 | $1,069.53 | $2,139.06 |
| 145 | Sanchez, Jorge | $873.37 | $873.37 | $1,746.74 |
| 146 | Sanchez, Nicolas | $1,965.16 | $1,965.16 | $3,930.32 |
| 147 | Segundo, Catalina | $13.73 | $13.73 | $27.46 |
| 148 | Semans, Tom | $1,293.81 | $1,293.81 | $2,587.62 |
| 149 | Spears, Whitney | $3,454.72 | $3,454.72 | $6,909.44 |
| 150 | Tepalcingo, Hermenegildo | $35.78 | $35.78 | $71.56 |
| 151 | Tlalmanalco, Sixto | $39.31 | $39.31 | $78.62 |
| 152 | Topey, George | $5,793.46 | $5,793.46 | $11,586.92 |
| 153 | Torres, Jesus | $148.60 | $148.60 | $297.20 |
| 154 | Torrez, Gabriela | $1,176.18 | $1,176.18 | $2,352.36 |

|     | Employee Name | Back Wages (BW) | Liquidated Damages (LD) | Total – BW and LD |
| --- | --- | --- | --- | --- |
| 155 | Trejo, Brian Omar | $1,134.24 | $1,134.24 | $2,268.48 |
| 156 | Uscanga, Lazaro | $3,353.96 | $3,353.96 | $6,707.92 |
| 157 | Valle, Angel | $49.59 | $49.59 | $99.18 |
| 158 | Vancini, Sarahy | $8,447.04 | $8,447.04 | $16,894.08 |
| 159 | Vanegas, Jesus | $29.51 | $29.51 | $59.02 |
| 160 | Vasquez, Adelio | $597.17 | $597.17 | $1,194.34 |
| 161 | Vasquez, Maria | $143.54 | $143.54 | $287.08 |
| 162 | Vasquez, Mauricio | $108.83 | $108.83 | $217.66 |
| 163 | Vega, Pedro Bonilla | $415.10 | $415.10 | $830.20 |
| 164 | Velasquez, Gilberto | $74.66 | $74.66 | $149.32 |
| 165 | Viera, Omar | $883.99 | $883.99 | $1,767.98 |
| 166 | Whitter, Michael | $282.30 | $282.30 | $564.60 |
| 167 | William, David | $115.25 | $115.25 | $230.50 |
| 168 | Williams, Arzelius | $1,264.55 | $1,264.55 | $2,529.10 |
| 169 | Zarco, Jose | $220.15 | $220.15 | $440.30 |
| 170 | Zarco, Yonatan | $933.03 | $933.03 | $1,866.06 |
|     | **Total** | **$281,900.00** | **$281,900.00** | **$563,800.00** |

**Secretary v. KDE Equine LLC et al., 19-cv-3389-KAM-SJB**
**Consent Judgment – Exhibit B**

# EMPLOYEE RIGH

## UNDER THE FAIR LABOR STANDAR

### FEDERAL MINIMUM WAG

# $7.25 PER HOUR

### BEGINNING JULY 24, 2009

**The law requires employers to display this poster where employees ca**

**OVERTIME PAY**
At least 1½ times the regular rate of pay for all hours worked over 40 in a w

**CHILD LABOR**
An employee must be at least 16 years old to work in most non-farm jobs a in non-farm jobs declared hazardous by the Secretary of Labor. Youths 14 work outside school hours in various non-manufacturing, non-mining, non-certain work hours restrictions. Different rules apply in agricultural employm

**TIP CREDIT**
Employers of "tipped employees" who meet certain conditions may claim a based on tips received by their employees. Employers must pay tipped em of at least $2.13 per hour if they claim a tip credit against their minimum wa employee's tips combined with the employer's cash wage of at least $2.13 the minimum hourly wage, the employer must make up the difference.

**NURSING MOTHERS**
The FLSA requires employers to provide reasonable break time for a nursin who is subject to the FLSA's overtime requirements in order for the employ milk for her nursing child for one year after the child's birth each time such to express breast milk. Employers are also required to provide a place, oth that is shielded from view and free from intrusion from coworkers and the p used by the employee to express breast milk.

**ENFORCEMENT**
The Department has authority to recover back wages and an equal amoun in instances of minimum wage, overtime, and other violations. The Departm and/or recommend criminal prosecution. Employers may be assessed civi each willful or repeated violation of the minimum wage or overtime pay pro Civil money penalties may also be assessed for violations of the FLSA's ch

# DERECHOS DE LOS TRABAJA

## BAJO LA LEY DE NORMAS JUSTAS DE TRABAJ

# SALARIO MÍNIMO FEDER

# $7.25 POR HORA

## A PARTIR DEL 24 DE JULIO DE 2009

### La ley exige que los empleadores exhiban este cartel donde sea visible po

**PAGO POR SOBRETIEMPO**

Por lo menos tiempo y medio (1½) de la tasa regular de pago por todas las horas trab
en una semana laboral.

**TRABAJO DE MENORES DE EDAD**

El empleado tiene que tener por lo menos 16 años para trabajar en la mayoría de los t
por lo menos 18 años para trabajar en los trabajos no agrícolas declarados peligrosos
Trabajo. Los menores de 14 y 15 años pueden trabajar fuera del horario escolar en va
sean de manufactura, de minería, y que no sean peligrosas con ciertas restricciones a
aplican distintos reglamentos al empleo agrícola.

**CRÉDITO POR PROPINAS**

Los empleadores de "empleados que reciben propinas" que cumplan con ciertas con
reclamar un crédito de salario parcial basado en las propinas recibidas por sus emple
les tienen que pagar a los empleados que reciben propinas un salario en efectivo de p
por hora si ellos reclaman un crédito de propinas contra su obligación de pagar el sal
propinas recibidas por el empleado combinadas con el salario en efectivo de por lo m
empleador no equivalen al salario mínimo por hora, el empleador tiene que compensa

**MADRES LACTANTES**

La FLSA exige que los empleadores le proporcionen un tiempo de descanso razonab
madre lactante y que esté sujeta a los requisitos de sobretiempo de la FLSA, para que
leche manualmente para su niño lactante por un año después del nacimiento del niño
empleada tenga la necesidad de extraerse leche. A los empleadores también se les e
un lugar, que no sea un baño, protegido de la vista de los demás y libre de la intrusión
trabajo y del público, el cual pueda ser utilizado por la empleada para extraerse leche

**CUMPLIMIENTO**

El Departamento tiene la autoridad de recuperar salarios retroactivos y una cantidad i
perjuicios en casos de incumplimientos con el salario mínimo, sobretiempo y otros in
Departamento puede litigar y/o recomendar un enjuiciamiento criminal. A los emplead
imponer sanciones pecuniarias civiles por cada incumplimiento deliberado o repetido
de la ley del pago del salario mínimo o de sobretiempo. También se pueden imponer s
civiles por incumplimiento con las disposiciones de la FLSA sobre el trabajo de men
se pueden imponer sanciones pecuniarias civiles incrementadas por cada incumplimi

**Secretary v. KDE Equine LLC et ano., 19-cv-3389-KAM-SJB**
**Consent Judgment – Exhibit C**

**U.S. Department of Labor**
Wage and Hour Division



(Revised October 2019)

# Fact Sheet #23: Overtime Pay Requirements of the FLSA

This fact sheet provides general information concerning the application of the <u>overtime pay</u> provisions of the <u>FLSA</u>.

**Characteristics**

An employer who requires or permits an employee to work overtime is generally required to pay the employee premium pay for such overtime work.

**Requirements**

Unless specifically exempted, employees covered by the Act must receive overtime pay for hours worked in excess of 40 in a workweek at a rate not less than time and one-half their regular rates of pay. There is no limit in the Act on the number of hours employees aged 16 and older may work in any workweek. The Act does not require <u>overtime pay</u> for work on Saturdays, Sundays, holidays, or regular days of rest, as such.

The Act applies on a workweek basis. An employee's workweek is a fixed and regularly recurring period of 168 hours -- seven consecutive 24-hour periods. It need not coincide with the calendar week, but may begin on any day and at any hour of the day. Different workweeks may be established for different employees or groups of employees. Averaging of hours over two or more weeks is not permitted. Normally, overtime pay earned in a particular workweek must be paid on the regular pay day for the pay period in which the wages were earned.

The regular rate of pay cannot be less than the <u>minimum wage</u>. The regular rate includes all remuneration for employment except certain payments excluded by the Act itself. Payments which are not part of the regular rate include pay for expenses incurred on the employer's behalf, premium payments for overtime work or the true premiums paid for work on Saturdays, Sundays, and holidays, discretionary bonuses, gifts and payments in the nature of gifts on special occasions, and payments for occasional periods when no work is performed due to vacation, holidays, or illness.

Earnings may be determined on a piece-rate, salary, commission, or some other basis, but in all such cases the overtime pay due must be computed on the basis of the average hourly rate derived from such earnings. This is calculated by dividing the total pay for employment (except for the statutory exclusions noted above) in any workweek by the total number of hours actually worked.

Where an employee in a single workweek works at two or more different types of work for which different straight-time rates have been established, the regular rate for that week is the weighted average of such rates. That is, the earnings from all such rates are added together and this total is then divided by the total number of hours worked at all jobs. In addition, section 7(g)(2) of the FLSA allows, under specified conditions, the computation of overtime pay based on one and one-half times the hourly rate in effect when the overtime work is performed. The requirements for computing overtime pay pursuant to section 7(g)(2) are prescribed in <u>29 CFR 778.415</u> through <u>778.421</u>.

Where non-cash payments are made to employees in the form of goods or facilities, the reasonable cost to the employer or fair value of such goods or facilities must be included in the regular rate.

**Typical Problems**

Fixed Sum for Varying Amounts of Overtime: A lump sum paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount of money paid is equal to or greater than the sum owed on a per-hour basis. For example, no part of a flat sum of $180 to employees who work overtime on Sunday will qualify as an overtime premium, even though the employees' straight-time rate is $12.00 an hour and the employees always work less than 10 hours on Sunday. Similarly, where an agreement provides for 6 hours pay at $13.00 an hour regardless of the time actually spent for work on a job performed during overtime hours, the entire $78.00 must be included in determining the employees' regular rate.

Salary for Workweek Exceeding 40 Hours: A fixed salary for a regular workweek longer than 40 hours does not discharge FLSA statutory obligations. For example, an employee may be hired to work a 45 hour workweek for a weekly salary of $405. In this instance the regular rate is obtained by dividing the $405 straight-time salary by 45 hours, resulting in a regular rate of $9.00. The employee is then due additional overtime computed by multiplying the 5 overtime hours by one-half the regular rate of pay ($4.50 x 5 = $22.50).

Overtime Pay May Not Be Waived: The overtime requirement may not be waived by agreement between the employer and employees. An agreement that only 8 hours a day or only 40 hours a week will be counted as working time also fails the test of FLSA compliance. An announcement by the employer that no overtime work will be permitted, or that overtime work will not be paid for unless authorized in advance, also will not impair the employee's right to compensation for compensable overtime hours that are worked.

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

| | |
|---|---|
| **U.S. Department of Labor** | **1-866-4-USWAGE** |
| Frances Perkins Building | TTY: 1-866-487-9243 |
| 200 Constitution Avenue, NW | **Contact Us** |
| Washington, DC 20210 | |

**Departamento De Trabajo de EEUU**
División de Horas y Salarios



(Octubre 2007)

## Hoja de datos #23: Requisitos para el pago de sobretiempo bajo la Ley de Normas Razonables de Trabajo

Esta ficha técnica ofrece información general con respecto a la aplicación de las disposiciones de la Ley de Normas Razonables de Trabajo (FLSA) para el pago de sobretiempo.

**Características**

Un empleador que requiere o permite que un empleado trabaje sobretiempo generalmente debe pagar al empleado una prima por el trabajo de sobretiempo.

**Requisitos**

A menos que estén expresamente exentos, los empleados bajo el alcance de la Ley deben recibir el pago de sobretiempo a una tasa no inferior a tiempo y medio de la tasa regular de pago del trabajador por cada hora trabajada en exceso de 40 en una semana laboral. La Ley no establece limitaciones con respecto al número de horas que los empleados mayores de 16 años pueden trabajar en una semana laboral. La Ley no requiere el pago de sobretiempo por trabajar los sábados, domingos, feriados o días de descanso como tales.

La Ley se aplica por semana laboral. La semana laboral de un empleado es un período fijo y regularmente recurrente de 168 horas, siete períodos consecutivos de 24 horas. No es necesario que coincida con una semana calendario, sino que puede comenzar en cualquier día y a cualquier hora. Se pueden establecer diferentes semanas laborales para diferentes empleados o grupos de empleados. No se permite un promedio de horas entre dos o más semanas. Por lo general, el pago de sobretiempo devengado en una semana en particular debe realizarse en el día de pago habitual para el período en el cual fue ganado.

La tasa regular de pago no puede ser inferior al salario mínimo. La tasa regular incluye toda remuneración por el empleo, excepto ciertos pagos excluidos por la Ley misma. Los pagos que no son parte de la tasa regular incluyen el pago de gastos incurridos en representación del empleador, pagos de primas por sobretiempo trabajado o las primas verdaderas pagadas por el trabajo en días sábados, domingos y feriados, bonos discrecionales, obsequios y pagos en forma de obsequio en ocasiones especiales, y pagos por períodos ocasionales cuando no se realiza trabajo debido a vacaciones, feriados o enfermedad.

Las ganancias pueden determinarse en base a destajo o por pieza, salario, comisión u otros criterios, pero en todos los casos el pago de sobretiempo adeudado deberá computarse en base a la tasa por hora promedio derivada de tales ganancias. Esto se calcula dividiendo el pago total por empleo (con la excepción de las exclusiones nombradas por ley mencionadas anteriormente) en cualquier semana laboral por el número total de horas realmente trabajadas.

Cuando un empleado en una sola semana laboral realiza dos o más tipos diferentes de trabajo para los cuales se han establecido diferentes tasas regulares de pago, la tasa regular para esa semana se determinará calculando el promedio de tales tasas. Es decir, las ganancias de tales tasas se suman y el total se divide por el número total de horas trabajadas en todas las funciones. Adicionalmente, el artículo 7(g)(2) de la FLSA permite, bajo ciertas condiciones, el cálculo del pago de sobretiempo basado en tiempo y medio de la tasa de pago vigente en el

momento de trabajarse el sobretiempo. Los requisitos para el cálculo del pago de horas extra según el artículo 7(g)(2) figuran en 29 CFR 778.415 hasta 778.421.

Cuando se realizan pagos que no sean en efectivo, en forma de mercaderías o servicios, el costo razonable para el empleador o el valor de tales bienes o servicios debe incluirse en la tasa regular.

### Problemas típicos

Suma fija para cantidades variables de sobretiempo: un monto por trabajo realizado durante las horas de sobretiempo sin tener en cuenta el número de horas de sobretiempo trabajadas no se considera una prima de sobretiempo aunque la cantidad de dinero pagada sea igual o mayor a la suma adeudada basada en la tasa por hora. Por ejemplo, ninguna parte de un monto de $180 para empleados que trabajan sobretiempo un domingo se considerará como una prima de sobretiempo, aunque la tasa por hora de los empleados sea de $12.00 la hora y los empleados siempre trabajen menos de 10 horas el domingo. Del mismo modo, cuando un acuerdo establece un pago de 6 horas a $13.00 por hora independientemente del tiempo real dedicado al trabajo realizado durante las horas de sobretiempo, la totalidad de los $78.00 debe incluirse para determinar la tasa regular de los empleados.

Salario para la semana laboral que excede las 40 horas: un salario fijo por una semana laboral regular que exceda las 40 horas no representa una exención de las obligaciones establecidas en la FLSA. Por ejemplo, un empleado puede ser contratado para trabajar 45 horas por semana laboral por un salario semanal de $405. En este caso la tasa regular que se obtiene dividiendo los $405 del salario directo por 45 horas es de $9.00. Entonces al empleado se le adeuda el pago de sobretiempo adicional calculado multiplicando las 5 horas de sobretiempo por la mitad de la tasa regular de pago ($4.50 x 5 = $22.50).

No se puede renunciar al pago de sobretiempo: no se puede renunciar al requisito de sobretiempo por un acuerdo entre empleador y empleados. Un acuerdo que establezca que sólo se computarán como horas trabajadas 8 horas por día o sólo 40 horas a la semana tampoco cumple con la Ley de Normas Razonables de Trabajo. Un anuncio por parte del empleador estableciendo que no se permitirá trabajar sobretiempo, o que el sobretiempo no se pagará a menos que sea autorizado por adelantado, tampoco cercenará el derecho del trabajador a una retribución por las horas de sobretiempo trabajadas.

### Dónde obtener información adicional

**Para mayor información, visite nuestro sitio en la Red de Horas y Salarios: http://www.wagehour.dol.gov o comuníquese llamando a nuestro servicio gratuito de información y asistencia Horas y Salarios, disponible de 8 a.m. a 5 p.m. en su zona horaria, 1-866-4USWAGE (1-866-487-9243).**

Esta publicación tiene por objeto brindar información general y no deberá ser considerada del mismo tenor que las declaraciones oficiales de postura contenidas en los reglamentos.  La presente ficha es parte de una serie de fichas técnicas que presentan los diferentes programas del Departamento de Trabajo de los EE. UU. El objetivo es brindar únicamente una descripción general y no tiene validez jurídica.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-877-889-5627
Comuníquese con nosotros